IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

KARA SHORT,

        Plaintiff,

v.                                        CIVIL ACTION NO. 2:16-cv-09294

EXPERIAN INFORMATION SYSTEMS, INC., et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Before the Court are Motions to Dismiss the First Amended Complaint filed by Defendants Citibank, N.A., (ECF No. 35), and Discover Bank, (ECF No. 44). Also pending is Plaintiff Kara Short's Motion for Leave to File a Second Amended Complaint. (ECF No. 47.) For the reasons that follow, the Motion for Leave to Amend is **GRANTED IN PART** and **DENIED IN PART**. Due to the filing of the Second Amended Complaint, the Motions to Dismiss are **DENIED AS MOOT**.

*I.    BACKGROUND*

Plaintiff brings this action challenging the accuracy of certain negative entries on her credit reports. Originally named as Defendants were three credit reporting agencies ("CRAs")—TransUnion LLC ("TransUnion"), Experian Information Solutions, Inc. ("Experian"), and Equifax Information Services, LLC ("Equifax")—and three lending institutions—Discover Bank ("Discover"), Chase Bank USA, N.A. ("Chase"), and Citibank, N.A ("Citibank") (collectively "the

Banks").[1]  In the First Amended Complaint filed in this action on December 19, 2016, Plaintiff brought a claim for violations of the Fair Credit Reporting Act ("FCRA") against the CRAs as well as claims for defamation and violations of the West Virginia Consumer Credit and Protection Act ("WVCCPA") against the Banks.

Citibank and Discover moved to dismiss the First Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  Plaintiff responded by moving for leave to file a Second Amended Complaint.  The motion was timely pursuant to the Court's Scheduling Order, (ECF No. 33), which set a deadline for amended pleadings of January 23, 2017.  Only Citibank opposes the amendment.  Accordingly, the Court confines its discussion of Plaintiff's factual allegations to those relevant to Citibank.

Plaintiff accessed her TransUnion, Experian, and Equifax credit reports on November 3, 2015.  (Second Am. Compl. ¶¶ 17, 49, 81.)  Each credit report contained alleged inaccuracies relating to Plaintiff's Citibank account.  In each case, Citibank reported the account as a charged-off debt for $1016.  Plaintiff claims that she previously paid the debt on the account in full under the terms of a settlement agreement between her and Citibank.  (*See id.* ¶ 40.)  Plaintiff contends that since Citibank had agreed to treat the debt as fully paid, the account should not have appeared on her credit reports.  With the assistance of counsel, Plaintiff sent letters to TransUnion, Equifax, and Experian disputing Citibank's reporting.  (*See id.*)

Notice of the dispute eventually reached Citibank.  Citibank responded to the dispute by altering its reporting, though not to Plaintiff's satisfaction.  Each credit report still lists the disputed account.  On the Experian credit report, the account is now listed with this description:

---

[1] Plaintiff's claims against TransUnion, Equifax, and Chase have been resolved.  These parties have been dismissed as parties to this action.

"Paid for Less than Full Balance; Paid Charge Off." (*Id.* ¶ 43.) The TransUnion report lists the account as disputed by the consumer with the descriptor "current, paid, or paying as agreed." (*Id.* ¶ 73.) The Equifax report also identifies the account as disputed, indicates that it was paid for less than the full balance, and describes the account as a "paid charge off." (*Id.* ¶ 105.)

As stated above, Plaintiff's First Amended Complaint alleged that Citibank defamed her and violated the WVCCPA by continuing to report the disputed account. In her latest proposed amendment, Plaintiff expands on her allegations that Citibank's defamatory conduct was malicious and carried out with willful intent to injure her. (Second Am. Compl. Count IV.) Her WVCCPA claim has undergone minor alterations but remains substantively unchanged. (*Id.* Count V.) The most significant change between the two pleadings is the inclusion of an FCRA claim against Citibank for failure to conduct a reasonable investigation into its reporting as mandated by 15 U.S.C. § 1681s-2(b). (*Id.* Count II.) Citibank challenges the amendment as futile.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 15 permits amendment of a complaint more than twenty-one days after service "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Under Rule 15(a), "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile." *Matrix Capital Mgmt. Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172, 193 (4th Cir. 2009) (citing *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006)). This liberal approach to amendment "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Id.* (internal quotation marks and citation omitted).

"Leave to amend should be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous on its face. A proposed amendment is futile 'if . . . [it] fails to satisfy the requirements of the federal rules,' such as Rule 12(b)(6)." *Friend v. Remac Am., Inc.*, 924 F.Supp.2d 692, 696 (N.D. W. Va. 2013) (citations omitted).

A motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6); *Edwards v. City of Goldsboro,* 178 F.3d 231, 243 (4th Cir. 1999). "[I]t does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir.1992) (Citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that "the defendant is liable for the misconduct alleged." *Id.* A motion to dismiss will be granted if, "after accepting all well pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [her] claim entitling [her] to relief." *Edwards*, 178 F.3d at 244.

### III. DISCUSSION

Citibank opposes the amendment of Plaintiff's pleading on grounds of futility. It argues that the recently added FCRA claim fails to state a claim because Plaintiff cannot demonstrate that her credit report was inaccurate or incomplete. Citibank reasons that without this foundational showing, Plaintiff cannot proceed on a claim that it fell short of its duty to investigate and correct her credit report. As for the defamation and WVCCPA claims, Citibank renews the arguments put forward in its Motion to Dismiss. Citibank continues to maintain that the FCRA preempts these claims.

  *A.* *Section 1681s-2(b) Claim*

The FCRA is a comprehensive statutory scheme designed to regulate and promote fairness in the consumer reporting industry. 15 U.S.C. § 1681(a); *Ross v. FDIC*, 625 F.3d 808, 812 (4th Cir. 2010). As part of that scheme, the FCRA imposes duties on entities that furnish debt information to CRAs, or "furnishers," to ensure the accuracy of their reporting. 15 U.S.C. § 1681s-2(b). Upon receiving notice from a consumer disputing the completeness or accuracy of an item contained in a credit report, a furnisher of information must conduct an investigation with respect to the disputed information. If the investigation reveals that the information is incomplete or inaccurate, the furnisher must report those results to any CRA in possession of the information at issue. *Id.* § 1681s-2(b)(1)(D). Citibank is a furnisher of information under the FCRA. Plaintiff alleges Citibank violated § 1681s-2(b)(1) by failing to adequately conduct an investigation with respect to the disputed information in her credit reports.

To state a claim under § 1681s-2(b), the consumer must make a plausible showing that an item of information in the credit reporting is inaccurate or incomplete. *See Chiang v. Verizon New England, Inc.*, 595 F.3d 26, 38 (1st Cir. 2010) (finding that a plaintiff must show "actual

5

inaccuracy" to support a claim against a furnisher of credit information under § 1681s-2(b)); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (since the FCRA "protect[s] consumers from the transmission of inaccurate information about them," a plaintiff must make a showing of inaccurate reporting (quoting *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1157 (9th Cir. 2009))). A report may be incomplete where it contains "omissions that render the reported information misleading." *Saunders v. Branch Banking and Trust Co. of Va.*, 526 F.3d 142, 148 (4th Cir. 2008). Accordingly, a consumer states a claim under the FCRA if she alleges that a furnisher "provide[d] information in such a manner as to create a materially misleading impression." *Id.* (citations omitted)); *Dalton v. Capital Associated Indus., Inc.*, 257 F.3d 409, 415 (4th Cir. 2001) (describing a report as inaccurate not just when it is "'patently incorrect'" but also "when it is 'misleading in such a way and to such an extent that it can be expected to [have an] adverse[]' effect." (quoting *Sepulvado v. CSC Credit Servs.*, 158 F.3d 890, 895 (5th Cir. 1998))).

Plaintiff alleges that the use of the term "charge off" by Citibank in its credit reporting creates a misleading impression of the status of her debt. Citibank counters that a "charge off" is simply an accounting term used to identify accounts for which no payment has been received for 180 days or more and does not necessarily carry implications for whether the consumer remains liable for the debt. Arguing that the "charged off" notation does not conflict with Plaintiff's assertion that her debt was no longer owed, Citibank asks the Court to dismiss Plaintiff's § 1681s-2 claim for failure to allege inaccuracy or incompleteness. Plaintiff responds that Citibank's reporting was inaccurate because it continued to report the debt on Plaintiff's credit reports as a "charge off" following the settlement. The gravamen of Plaintiff's claim, in other words, is that

6

Citibank's use of the term "charge off" does not comport with the standard definition of the term. Citibank could not accurately report that it did not expect to recover a debt from Plaintiff when it had recovered the debt in full under the terms of the parties' settlement.

Citibank's argument is imbued with factual assumptions that are not properly drawn at the Rule 12(b)(6) stage of the proceedings.[2] Even if the Court adopts Citibank's contention that the term "charge off" is susceptible of only one definition, it remains to be seen whether Citibank used the term in this case in a manner harmonious with standard usage in the industry. *See Fischer v. SunTrust Mortg. Inc.*, No. CV-15-02075-PHX-JJT, 2016 WL 2746978, at *4 (D. Ariz. May 10, 2016) (denying a motion to dismiss based on use of the term "charge off" by reasoning that "[w]hether there is a standard definition of 'charge off' in the credit reporting industry, whether SunTrust used the term inconsistently with it, and whether any such inconsistency amounts to inaccurate reporting within the meaning of FCRA, are matters for another day"). The Court finds that continued usage of the term "charge off" could create a materially misleading impression if it obscured the fact that Plaintiff had paid the account in full under an agreement with her creditor.

Alternatively, Citibank argues that to the extent an FCRA violation could lie for failure to remove the "charge off" notation following settlement, Plaintiff's amendment would nevertheless be futile because it is not an FCRA violation for a creditor to accurately report negative historical information about a paid account. *See Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991). While this may be true as a general proposition, the Court lacks the facts necessary to determine whether Citibank's reporting accurately reflected the history of Plaintiff's

---

[2] Indeed, the Court notes that each of Citibank's cases considering the effect of a "charge off" designation did so in the context of a summary judgment motion. *See Nielsen v. E*Trade Mortg. Corp.*, No. 13-cv-11085, 2015 WL 1469847, at *7 (E.D. Mich. Mar. 30, 2015); *Plaza Bank v. Alan Green Family Trust*, No. 2:11-cv-00130-MMD-RJJ, 2012 WL 4617633, at *4 (D. Nev. 2012).

account. Taking as true Plaintiff's allegations, the Court **FINDS** that the Second Amended Complaint sufficiently pleads a violation of the FCRA under § 1684s-2(b).

  *B.*  *Defamation Claim*

Plaintiff's defamation claim as to this defendant centers on the contention that Citibank continued to report her account as a "charge off." Citibank challenges this claim as preempted by the FCRA and maintains that amendment of the pleadings would not resolve this impediment.

Two FCRA preemption provisions are at issue in this case. 15 U.S.C. §§ 1681h(e); 1681t(b)(1)(F). With regard to preemption of the defamation claim, Citibank relies principally on § 1681h(e). This provision states:

> Except as provided in sections 1681n and 1681o of this title, no consumer may bring any action or proceeding in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information against any consumer reporting agency, any user of information, or any person who furnishes information to a consumer reporting agency, based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report except as to false information furnished with malice or willful intent to injure such consumer.

15 U.S.C. § 1681h(e) (emphasis added). "Congress intended this section's general bar on defamation, invasion of privacy, and negligence actions to be the quid pro quo for providing full disclosure under the FCRA." *Ross*, 625 F.3d at 814 (citing *Thornton v. Equifax, Inc.*, 619 F.2d 700, 703 (8th Cir. 1980)). A consumer seeking to avoid this bar must prove malice or willful intent to injure. § 1681h(e).

Plaintiff and Citibank have assumed from the outset that this statute controls the defamation claim. They focus all their attention on the statute's exception, concluding that to overcome the preemptive effect of the provision, Plaintiff must allege facts to support a conclusion that Citibank

8

furnished her credit information with malice or willful intent to injure her. In doing so, the parties miss the proper inquiry as to the applicability of § 1681h(e).

> The application of § 1681h(e) involves a two-step inquiry:
>
> First, we ask whether the claim falls within the scope of § 1681h(e), which includes only claims "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of this title, or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." The second step in the analysis involves determining whether the "malice or willful intent to injure" exception to the general bar against state law actions applies.

*Ross*, 625 F.3d at 814. Thus, to demonstrate that Plaintiff's defamation claim is preempted by § 1681h(e), Citibank must first show that the claim relates to those information disclosures specifically covered by the statute. Citibank glosses over this step of the analysis, arguing that the defamation claim falls within the scope of the statute merely because it is "based on the 'reporting of information' by Citibank 'to a consumer reporting agency.'" (Citibank's Mem. in Supp. Mot. to Dismiss at 3 (quoting § 1681h(e)).) The argument ignores the plain language of the statute, which expressly covers only those disclosures made pursuant to §§ 1681g, 1681h, or 1681m, or "based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." § 1681h(e).

This Court has previously addressed Citibank's argument in nearly identical circumstances. *Evans v. Trans Union LLC*, No. 2:10-cv-00945, 2011 WL 672061 (S.D. W. Va. Feb. 14, 2011). In *Evans*, the question of § 1681h(e) preemption was presented in the context of a state law negligence claim brought against a furnisher of credit information. The furnisher, a local healthcare provider, was charged with negligently recording and reporting payment on the

9

plaintiff's medical bills. This Court found § 1681h(e) inapplicable to the plaintiff's negligence claim because the claim did not fall within the limited scope of the statute. *Id.* at *8. The Court adopts its analysis here. Again, the issue is whether Plaintiff's defamation claim is "based on information disclosed pursuant to section 1681g, 1681h, or 1681m of [the FCRA], or based on information disclosed by a user of a consumer report to or for a consumer against whom the user has taken adverse action, based in whole or in part on the report." § 1681h(e).

To begin, §§ 1681g and 1681h apply only to CRAs. 15 U.S.C. § 1681g (requiring CRAs to disclose the information in a consumer's credit file upon request); § 1681h (regulating the disclosures that CRAs are obligated to provide under § 1681g); *see Ross*, 625 F.3d at 814 (drawing same conclusion). Plaintiff alleges that Citibank is a furnisher of information, not a CRA. Section 1681m is not relevant because it applies only to users of consumer reports. Citibank is not a user of credit information in the circumstances described in the pleadings. 15 U.S.C. § 1681m (setting forth the duties of users of credit information taking "any adverse action with respect to any consumer that is based in whole or in part on any information contained in a credit report"); *Evans*, 2011 WL 672061, at *8 ("CAMC is not a user of consumer reports vis-à-vis Plaintiff in this case."). Finally, Citibank is not alleged to have used Plaintiff's credit report at all, "much less take[n] any adverse action against her based on information contained in her credit report." *Evans*, 2011 WL 672061, at *8; *see Ross*, 625 F.3d at 814 ("The final category . . . does not appear to apply because WaMu neither used Ross's consumer report nor took adverse action based on information in Ross's report or information disclosed by a user."). Thus, the last category is inapplicable.

The Court finds that Plaintiff's defamation claim does not fall within the scope of § 1681h(e). There is no need to discuss the "malice or willful injury" inquiry made subject of the parties' dispute. The remaining issue—one Citibank raises in a passing footnote—is whether the FCRA's alternative preemption provision compels the rejection of Plaintiff's amended defamation claim on grounds of futility.

Citibank argues that because the defamation claim also challenges its responsibilities as a furnisher of information to CRAs, the claim is preempted by § 1681t(b)(1)(F). Citibank's straightforward assertion belies the vexing nature of the question. The provision at issue states:

> No requirement or prohibition may be imposed under the laws of any State (1) with respect to any subject matter regulated under . . . (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies. . . .

§ 1681t(b)(1)(F). As explained above, § 1681s-2 describes the responsibilities of those who report credit information—so called "furnishers"—to CRAs. Section § 1681t(b)(1)(F) lies in apparent conflict with § 1681h(e). "[W]hile § 1681t(b)(1)(F) *seems* to preempt all state laws regarding the liability of information furnishers, section 1681h(e) preempts only certain types of common law actions against information furnishers, and then only under certain circumstances." *Evans*, 2011 WL 672061, at *4 (emphasis in original). The Fourth Circuit has not resolved the conflict, neither has any other federal court of appeals. *Ross*, 625 F.3d at 814 n.* (declining to decide the issue because even if the plaintiff's defamation claim was not preempted by § 1681t(b)(1)(F), the claim failed to survive summary judgment); *see Gorman*, 584 F.3d at 1165–67 (declining to decide the issue on similar grounds).

Courts take one of three distinct approaches in resolving this conflict. *See Barnhill v. Bank of America, N.A.*, 378 F. Supp. 2d 696, 699–704 (D.S.C. 2005) (describing the various "total

11

preemption," "temporal," and "statutory" approaches). This Court has given preference to the "statutory approach." *Evans*, 2011 WL 672061, at * 6; *see also Horton v. Synchrony Bank*, No. 5:16-cv-08512, 2016 WL 6582990, at *3 (S.D. W. Va. Nov. 4, 2016) (adopting the statutory approach). Under this interpretation, courts harmonize the conflicting provisions by reasoning that "Congress intended § 1681t(b)(1)(F) to fully preempt state statutory causes of action related to information furnishers . . . and § 1681h(e) to preempt only certain state common law causes of action." *Evans*, 2011 WL 672061, at *6. This approach affords proper deference to Congress, *see id.*, and the Court adopts it here.

Accordingly, the Court concludes that § 1681t(b)(1)(F) does not preempt Plaintiff's claim for defamation because the claim arises under the common law, not state statute. Amendment of the defamation claim is appropriate under these circumstances.

### C. WVCCPA Claims

Plaintiff alleges that Citibank violated the WVCCPA by making a false representation of the character, extent, and amount of its claim against her, W. Va. Code § 46A-2-127(d), and by communicating that Plaintiff willfully refused to pay a debt, § 46A-2-124(c). Citibank previously moved to dismiss the claims on grounds of preemption, § 1681t(b)(1)(F), and for failure to allege that Citibank reported the information for the purpose of collecting, or attempting to collect a debt. Now that Plaintiff proposes to amend her pleading, Citibank claims futility. The Court finds that FRCA preemption renders her proposed amendment of the WVCCPA futile because the claim would not survive a motion to dismiss under Rule 12(b)(6). Therefore, the Court denies leave to amend this claim and need not reach Citibank's alternative arguments.

Section 1681t(b)(1)(F) of the FCRA preempts state laws imposing requirements on furnishers of credit information with respect to any subject matter regulated under § 1681s-2. The text of that statute is set forth above. Plaintiff is of the belief that the FCRA does not preempt her WVCCPA claims because debt collection does not fall within the scope of a furnisher of information's duties under § 1681s-2. Her view of the statute is far too narrow. In *Ross*, the Fourth Circuit considered whether § 1681t(b)(1)(F) preempted claims brought under the North Carolina Unfair and Deceptive Trade Practices Act—a statute "prohibit[ing] 'unfair or deceptive acts or practices in or affecting commerce.'" 625 F.3d at 812 (quoting N.C. Gen. Stat. § 75-1.1(a)). The Fourth Circuit began its analysis by noting that § 1681s-2 imposes a duty on furnishers of information to ensure the accuracy of their reporting, including correcting errors as necessary. *Id.* at 813 (Citing § 1681s-2(a)(1)–(2)). Upon receiving notice from a consumer disputing the accuracy or completeness of reported information, the furnisher must "conduct[] an investigation into the dispute and correct[] any errors discovered with the CRAs." *Id.* (Citing § 1681s-2(b)(1)). The court reasoned that the unfair trade practices claim "runs into the teeth of the FCRA preemption provision." *Id.*

Plaintiff argues that her WVCCPA claims are not covered by § 1681s-2 because "that section does not address debt collection." (Pl.'s Reply Mot. to Amend at 6.) That is not the relevant question. Under the plain language of § 1681t(b)(1)(F), the question is whether Plaintiff seeks to use the WVCCPA as a "requirement or prohibition" under West Virginia law relating to subject matter regulated under § 1681s-2. *See Ross*, 625 F.3d at 813 (finding the FCRA preempts an unfair trade practices claim because the claim sought to impose a "requirement or prohibition" on the activity governed by § 1681s-2). Plaintiff's WVCCPA claims arise directly from, and are

inextricably linked to, Citibank's reporting of allegedly inaccurate credit information to CRAs. As such, the claim is preempted by the FCRA. The Court therefore **FINDS** that amendment of the WVCCPA claims alleged in Count V against Citibank would be futile.

Discover is also named as a defendant in Count V. Though Discover has not opposed the amendment, Plaintiff's allegations against Discover mirror those against Citibank. Plaintiff alleges that Discover, acting as a furnisher of information, failed to correct disputed entries in her credit reports. (Second Am. Compl. ¶¶ 27–28, 55, 87.) The Court must find that the identical WVCCPA claims against Discover are similarly preempted by FCRA § 1681t(b)(1)(F). The Court **DENIES** leave to amend Count V.

## IV. CONCLUSION

For the foregoing reasons, the Motion for Leave to Amend is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 47.) The motion is **GRANTED** as to Counts I, II, III, and IV. As to Count V, the Court finds that amendment would be futile and **DENIES** leave to amend. The Court **ORDERS** that the Second Amended Complaint, (ECF No. 47-1), be filed as the operative pleading in this matter. The Motions to Dismiss, (ECF Nos. 35, 44), are **DENIED AS MOOT**.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: May 25, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE